A08A1112. ADAMS v. THE STATE.
(667 SE2d 186)

PHIPPS, Judge.

Anson Adams appeals his convictions for aggravated assault and for the felony of fleeing and attempting to elude the police, arguing that the evidence at his jury trial was insufficient and that the indictment failed to sufficiently allege aggravated assault and thus was fatally defective. Finding no error, we affirm.

The trial evidence, viewed in the light most favorable to the verdict,[1] showed that on the night of October 12, 2006, Adams consumed alcoholic beverages at a charity event. Afterward, he drove to a nightclub, parked his vehicle, but then decided to go home. While backing his vehicle, Adams struck a parked, unoccupied car. A county sheriff's deputy, David Edenfield, was providing security at the nightclub and witnessed the accident. Edenfield, who was wearing a law enforcement uniform and badge, began to walk toward Adams's vehicle with his hand on his gun, calling for Adams to stop. Adams panicked because he was afraid that if he was arrested for driving under the influence he would lose his job. Instead of stopping he began to drive through the parking lot. Edenfield ran through the parking lot to keep Adams in sight. Adams turned into another lane in the parking lot, and Edenfield stepped into that lane with his gun drawn. Adams accelerated toward Edenfield, reaching a speed of 35 to 40 miles per hour. When Adams was two or three car lengths from Edenfield, the officer ran out of the lane to avoid being struck by

---

[1] See *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001).

378

Adams. Adams then struck a marked police car and thereafter was apprehended.

Adams was indicted for aggravated assault under OCGA § 16-5-21 and felony-grade fleeing and attempting to elude the police under OCGA § 40-6-395 (b) (5) (A). The aggravated assault count of the indictment charged that Adams

> did make an assault upon [Edenfield], knowing said Deputy Edenfield was a peace officer engaged in the performance of his duties, said assault being made with a motor vehicle, an object which, when used offensively against another person is likely to result in serious bodily injury, by rapidly accelerating said motor vehicle toward Deputy Edenfield while in close proximity to said deputy, contrary to the laws of said State. . . .

Adams also was indicted for several other offenses not at issue in this appeal. He unsuccessfully moved to quash his indictment on the aggravated assault count. After the trial, he filed a motion for new trial and a motion in arrest of judgment, and the court denied both motions.

1. Adams argues that there was insufficient evidence to support his conviction for aggravated assault. In reviewing the sufficiency of the evidence, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] The appellant no longer enjoys a presumption of innocence, and we determine the legal sufficiency of the trial evidence and do not weigh that evidence or assess the credibility of witnesses.[3]

A person commits an aggravated assault, among other ways, by assaulting another "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[4] Although an automobile is not a deadly weapon per se, it may constitute one depending on the manner in which it is used.[5] "[C]entral to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20 be committed on the victim."[6] Under that Code section, "[t]here are two ways to commit an assault: when a person attempts to commit a violent injury to the person of another, and when a

---

[2] *Woods v. State*, 275 Ga. App. 471 (620 SE2d 660) (2005).
[3] Id.
[4] OCGA § 16-5-21 (a) (2).
[5] *Scott v. State*, 268 Ga. App. 889, 891 (b) (602 SE2d 893) (2004).
[6] *Brinson v. State*, 272 Ga. 345, 347 (1) (529 SE2d 129) (2000), citing OCGA § 16-5-21.

person commits an act which places another in reasonable apprehension of immediately receiving a violent injury."[7] The indictment did not specify the manner of assault and the jury was instructed as to both.

Adams argues that there was not sufficient evidence that he intended to injure Edenfield because the state did not rebut his testimony that he had no such intent and because he did not aim his vehicle at Edenfield, who stepped into his path. Criminal recklessness or negligence is not enough to find an intent to commit injury.[8] But criminal intent may be inferred from the circumstances,[9] and whether an automobile has been intentionally used in a manner constituting a deadly or offensive weapon is a question for the jury to resolve.[10] Although Adams testified that he did not see Edenfield standing in front of his vehicle, "[t]he jury was not required to accept [Adams's] trial testimony as true, but could judge his credibility and weigh his testimony against other evidence."[11] And "[t]he trier of fact may deduce, if it so wishes, that a person of sound mind and discretion intends the natural and probable consequences of his knowing acts."[12] Viewed in the light most favorable to the verdict, the trial evidence showed that Adams had the opportunity to see Edenfield; he had his headlights on and Edenfield was standing in front of his vehicle. The evidence further showed that Adams accelerated toward Edenfield and drove to within two or three car lengths of him without stopping, at which point Edenfield ran out of the vehicle's path. This evidence authorized a jury to find that Adams had the requisite intent to commit injury.[13]

Moreover, there was sufficient evidence to authorize a jury finding that Adams intended to act in a manner that placed Edenfield in reasonable apprehension of an immediate violent injury. In an aggravated assault case involving the use of a deadly weapon, "[a]ll that is required is that the assailant intend to commit the act which in fact places another in reasonable apprehension of injury,

---

[7] *Jackson v. State*, 276 Ga. 408, 411 (2) (577 SE2d 570) (2003), citing OCGA § 16-5-20 (a) (1), (2) (punctuation omitted).

[8] See *Dunagan v. State*, 269 Ga. 590, 593 (2) (a) (502 SE2d 726) (1998).

[9] See OCGA § 16-2-6.

[10] *Adams v. State*, 280 Ga. App. 779, 781 (634 SE2d 868) (2006); see *Cline v. State*, 199 Ga. App. 532, 533 (2) (405 SE2d 524) (1991) (aggravated assault with deadly weapon requires only general criminal intent that may be proved through circumstantial evidence and presents question for trier of fact).

[11] *Daniels v. State*, 280 Ga. 349, 350 (1) (628 SE2d 110) (2006) (citation omitted).

[12] *Bishop v. State*, 266 Ga. App. 129, 132 (2) (596 SE2d 674) (2004) (citation omitted); see OCGA § 16-2-5.

[13] See *Cline*, supra at 534 (jury could find intent for aggravated assault where driver had opportunity to stop or drive around police car in partial roadblock and driver first reacted as if he would stop or avoid car, but driver then struck car with officer inside).

and not a specific intent to cause such apprehension."[14] The evidence demonstrated that Adams intended to drive his vehicle rapidly through the parking lot. Adams argues, however, that Edenfield was not in reasonable apprehension of immediate injury. But Edenfield testified that as the vehicle was accelerating toward him he thought, "I could either move or I could get hit and probably die," and he ran out of the vehicle's path.[15] "[P]roof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from the conduct of the victim such as when he retreats to secure his safety."[16] The evidence authorized the jury to find Adams had committed an act with a deadly weapon that placed another in reasonable apprehension of injury.[17]

2. Adams argues that there was insufficient evidence to support his felony conviction for fleeing and eluding the police.

A driver commits the offense of fleeing or attempting to elude a police officer when he or she "willfully . . . fail[s] or refuse[s] to bring his or her vehicle to a stop or otherwise . . . flee[s] or attempt[s] to elude a pursuing . . . police officer when given a visual or audible signal to bring the vehicle to a stop."[18] OCGA § 40-6-395 (b) (5) (A) raises this offense from a misdemeanor to a felony when, among other things, the driver was "attempt[ing] to escape arrest for any offense other than a violation of [the Uniform Rules of the Road]." For the offense of fleeing from police to be a felony, therefore, "the defendant must be attempting to escape arrest for [an] offense other than a traffic offense."[19]

Adams testified at trial that he attempted to flee to avoid arrest for driving under the influence and for striking a parked car, both of which are violations of the Uniform Rules of the Road and do not support a felony conviction under OCGA § 40-6-395 (b) (5) (A).[20] But the indictment charged Adams with fleeing in an attempt to escape

---

[14] *Smith v. State*, 280 Ga. 490, 492 (1) (629 SE2d 816) (2006) (citation omitted); see also *Wroge v. State*, 278 Ga. App. 753, 754 (1) (629 SE2d 596) (2006) ("The focus of a reasonable apprehension of harm . . . is on the apprehension of the victim.") (citation omitted).

[15] Compare *Montford v. State*, 254 Ga. App. 524, 527-528 (1) (b) (564 SE2d 216) (2002) (finding no showing of reasonable apprehension where there was no evidence that victim saw car approaching him).

[16] *Hurt v. State*, 158 Ga. App. 722, 723 (282 SE2d 192) (1981) (citation omitted).

[17] See *Kirkland v. State*, 282 Ga. App. 331, 333 (1) (638 SE2d 784) (2006).

[18] OCGA § 40-6-395 (a).

[19] *State v. Grant*, 274 Ga. 826, 827 (561 SE2d 94) (2002) (interpreting earlier version of statute requiring attempt to escape from nontraffic felony offense); see *State v. Tiraboschi*, 269 Ga. 812, 813, n. 3 (504 SE2d 689) (1998) (state must prove defendant was attempting to escape arrest as provided under statute); *Buggay v. State*, 263 Ga. App. 520, 522-523 (2) (588 SE2d 244) (2003) (same).

[20] See OCGA §§ 40-6-271 (striking an unattended vehicle); 40-6-391 (DUI).

arrest for the felony of aggravated assault, and the evidence demonstrated that after Adams drove toward Edenfield and Edenfield ran out of the path of Adams's vehicle, Adams continued to flee. This evidence was sufficient to authorize a jury finding that, after nearly striking Edenfield with his vehicle, Adams also fled in an attempt to escape arrest for the actions that ultimately resulted in his conviction for aggravated assault.

3. Adams contends that the trial court erred in denying his motion to quash the indictment and his motion in arrest of judgment, arguing that the indictment for aggravated assault was flawed. His challenge to the indictment is in the form of a general demurrer because he argues that it did not contain all the essential elements of aggravated assault.[21]

An indictment must contain the elements of the offense charged, apprise the accused of the charge against which he must be prepared to defend himself, and protect against double jeopardy.[22] "[A]n indictment charging aggravated assault is fundamentally flawed when the essential elements of aggravation and intent to assault are not contained therein."[23] But an aggravated assault based on the use of a deadly weapon requires only a general criminal intent, and in such cases the indictment is "not void for failing to expressly allege the criminal intent."[24] "[T]he true test of the sufficiency of an indictment to withstand a general demurrer . . . is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective."[25]

Adams could not admit the aggravated assault charge of the indictment and still be innocent of aggravated assault. The indictment alleged a specific, offensive use of the vehicle. The indictment further alleged that, when used offensively, the vehicle was likely to result in significant bodily injury. In *Hester v. State*,[26] the Supreme Court of Georgia held a similarly-phrased indictment sufficient to charge aggravated assault.[27]

---

[21] See *Bramblett v. State*, 239 Ga. 336, 337 (1) (236 SE2d 580) (1977) ("A general demurrer challenges the sufficiency of the substance of the indictment, whereas a special demurrer challenges the sufficiency of the form of the indictment.") (citations and footnote omitted); see generally *State v. Eubanks*, 239 Ga. 483, 485-486 (238 SE2d 38) (1977); *Dennard v. State*, 243 Ga. App. 868, 869-870 (534 SE2d 182) (2000).

[22] *Hester v. State*, 283 Ga. 367, 368 (2) (659 SE2d 600) (2008).

[23] Id. (citation and punctuation omitted).

[24] *Bishop*, supra at 131-132 (citation omitted); see *Cline*, supra.

[25] *Dennard*, supra (footnote omitted).

[26] Supra.

[27] See id. at 367 (2) ("The aggravated assault counts alleged that [the defendant] 'did unlawfully make an assault . . . with a lamp, an object which when used offensively against a

We find the indictment in *Smith v. Hardrick*,[28] cited by Adams, distinguishable. Unlike the indictments in *Hester* and in this appeal, the *Hardrick* indictment alleged merely that the defendant "plac[ed] his hands around [the victim's] neck and us[ed] his hands to apply pressure to her neck contrary to the law[,]"[29] an act that the Court noted was so general as to encompass the lawful actions of chiropractors in treating their patients.[30]

The indictment in this case alleged a crime, the use of a vehicle as a deadly weapon by accelerating the vehicle in close proximity to and toward a person. And Adams has not shown that the indictment failed to apprise him of the offense against which he had to defend or that its language leaves him open to future prosecutions for the underlying conduct.[31] The trial court correctly rejected Adams's challenge to the indictment.

4. In his reply brief, Adams argues that the jury verdict on aggravated assault was the product of a coercive *Allen* charge that imposed an arbitrary deadline for the jury's decision. Although Adams objected to the charge at trial, he did not enumerate the charge as error on appeal and he may not, in his reply brief, assert a new argument.[32] Moreover, the record does not support Adams's claim that the trial court placed a time deadline on the jury's decision.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 22, 2008 — 

*Garrett & Gilliard, Michael C. Garrett*, for appellant.
*Daniel J. Craig, District Attorney, Ashley C. Wright, Assistant District Attorney*, for appellee.

---

person, is likely to and actually does result in serious bodily injury . . .' " and another count alleged that the defendant killed the victim " 'by striking her on and about the head with a lamp. . . .' ").

[28] 266 Ga. 54 (464 SE2d 198) (1995).
[29] Id.
[30] Id. at 56 (3).
[31] See *Presley v. State*, 251 Ga. App. 823, 825 (2) (a) (555 SE2d 156) (2001).
[32] *Miners v. State*, 250 Ga. App. 443, 446 (3) (550 SE2d 725) (2001).